CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JAN 19 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:06CR00038-2 |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| TONY AUGUSTUS CARTWRIGHT, | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant. | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count Eight with knowingly managing and controlling a place as an owner, lessee, agent, employee, and occupant, and did knowingly and intentionally rent, lease, profit from, and make available for use, with and without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, and using controlled substances, to wit: Cartwright's Recreation Center, 502 and 504 Kent Street, Winchester, VA, all in violation of Title 21, United States Code, Section 856.

On January 11, 2007, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Count Eight pursuant to a plea agreement between defendant and the government. The defendant acknowledged that the government had probable cause to bring all counts in the Indictment.

At this hearing the defendant was placed under oath and testified that his full legal name is Tony Augustus Cartwright, he was born on July 9, 1959, and he graduated from high school. The

defendant stated that he is able to read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offense and was satisfied that defendant understood the terms of the plea agreement.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt any facts alleged in Count Eight. The defendant further testified that he knew that the government retained its right to appeal any sentencing issues.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which

2

he is charged in Count Eight is a felony and that if his plea is accepted, he will be adjudged guilty of that offense. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant agreed to the forfeiture of real property and U.S. currency[1] as set forth in the plea agreement. The defendant testified that the forfeiture is proportionate to the degree and nature of the offense he committed and does not raise any of the concerns addressed in *United States v. Austin*, 113 S.Ct. 2801 (1993). The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offense with which he is charged, in the case of Count Eight, is twenty years imprisonment and a fine of $500,000, together with supervised release. The defendant was informed that his assets may be

---

[1] In a handwritten alteration to the plea agreement, the government and defendant agreed that the $2,000 defendant had agreed to forfeit was to be paid no later than two weeks after the guilty plea.

3

subject to forfeiture.

The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offense to which the defendant is pleading guilty.

Defendant testified he agreed that USSG § 2D1.8 is applicable to his criminal conduct, and that for purposes of USSG §§ 2D1.8 and 1B1.3 the acts and omissions in the underlying offense reasonably foreseeable to him involved at least 150 but less than 500 grams of cocaine base. The defendant further testified that he and the government had agreed that other than allowing the use of the premises, he had no participation in the underlying controlled substance offense and USSG § 2D1.8(a)(2) is applicable to his case. The defendant acknowledged that the parties anticipated the applicable base offense level to be 26.

4

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a two-level (2) reduction under USSG § 3E1.1(a), and because he meets the listed criteria, he should be granted an additional one-level (1) reduction under USSG § 3E1.1(b) if his offense level is 16 or greater. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel and appreciated the "fine job" his counsel had done. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he

5

understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Count Eight of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein is as follows:

Come now the United States of America, by counsel, and TONY AUGUSTUS CARTWRIGHT, by counsel and in proper person, and stipulate to following facts in support of the guilty pleas. The parties agree that the stipulated facts set forth below are accurate in every respect and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt. In addition, the United States and I agree to the stipulation of facts with the belief that said stipulation sets forth the relevant facts and circumstances as required by Section 6B1.4 of the Sentencing Guidelines. The defendant reserves the right to introduce other facts, in addition to this Statement of Facts, in mitigation of punishment. The parties stipulate as follows:

Beginning not later than January 2002 and continuing until September 6, 2006, an agreement existed in the Western District of Virginia between two or more persons to distribute and possess with intent to distribute cocaine base. The agreement included the persons charged in Count One of the Indictment in this case, and others.

It was a part of this conspiracy that Cartwright's Recreation Center located at 502 and 504 North Kent Street in the City of Winchester, Virginia, and its surrounding property, was used by members of the conspiracy known and unknown, including but not limited to, Volner Marsaille, Andre Ferne Saint-

6

Jean, Alonzo Wilds, and Mannot Lusca to sell, store and facilitate the distribution of crack cocaine within the city of Winchester, Virginia.

The property known as Cartwright's Recreation Center is owned of record by Allen Cartwright, the defendant's father, and the defendant has no fee, leasehold, tenancy, or any other legal or equitable interest in the real property or personal property contained therein.

Between January 2002 and September 6, 2006, the defendant helped manage and control Cartwright's Recreation Center as the agent of his father Allen Cartwright and as an occupant of the premises, although these duties were shared with his father. At various times the defendant would allow members of the drug conspiracy to use the premises to store cocaine base, and to conduct distributions of cocaine base on the premises, and immediately outside of the building. In return, the defendant received payments from the conspirators which were not in set amounts or in a certain frequency. The defendant knew the conspirators were storing and distributing drugs on the premises he managed. The defendant also on occasion received small quantities of cocaine base from the conspirators as payment. The defendant did not otherwise participate in the underlying drug offenses, and the government has no information that the defendant distributed controlled substances in exchange for money.

The proceeds the defendant received are difficult to calculate, but the parties agree that $2,000 is a fair approximation of the proceeds the defendant received from the offense.

Between January 2003 and September 6, 2006, law enforcement officers made seven controlled purchases of cocaine base from inside the Cartwright's Recreation Center building. An additional thirty-one purchases controlled purchases by law enforcement were made from the property outside the building or at locations immediately adjacent.

On March 10, 2005, law enforcement officers entered Cartwright's Recreation Center and recovered several pieces of evidence including cocaine base and marijuana. A pill bottle containing cocaine base was located under a pinball machine, a piece of cocaine base was in plain view near a pool table, and a small piece of cocaine base was on the window sill inside the building. Cocaine residue was all over the countertop inside the building. In total approximately one ounce of cocaine base was located on the property of Cartwrights Recreation Center.

On February 10, 2006, law enforcement authorities received information that drug dealing was occurring in and around Cartwright's Recreation Center. Based on that information, law enforcement officers responded to Cartwright's Inside Cartwright's law enforcement officers encountered persons known and unknown to the Grand Jury. Additionally, law enforcement officers seized in excess of five (5) grams of crack cocaine that was in plain view from inside Cartwright's. Law enforcement officers seized additional crack cocaine hidden on the property outside Cartwright's. During this investigation law enforcement officers learned that drugs were hidden in and around an unoccupied residence located at 516 North Kent Street, Winchester, Virginia. Law enforcement officers obtained a search warrant for the unoccupied residence and seized in excess of 50 grams of crack cocaine, multiple ounces of powder cocaine, baking soda and cooking dishes commonly used in the manufacturing of crack cocaine.

Neither the defendant nor his father took steps to stop the drug trafficking on the premises, other than the posting of No Trespassing signs outside the building in or about October 2004.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed

8

plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Count Eight of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Count Eight and adjudge him guilty of that offense. The undersigned further DIRECTS that a presentence report be prepared. A sentencing hearing hereby is scheduled for April 23, 2007 at 11:00 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations

9

within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: _____
United States Magistrate Judge

01-19-07
Date